■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY SPANN, Appellant. [918 NYS2d 588]—

On a motion by a defendant to suppress physical evidence, "the People have the burden of going forward to show the legality of the police conduct in the first instance" (*People v Whitehurst*, 25 NY2d 389, 391 [1969]; *see People v Blinker*, 80 AD3d 619 [2011]; *People v Hernandez*, 40 AD3d 777, 778 [2007]; *People v Thomas*, 291 AD2d 462, 463 [2002]; *People v Quinones*, 61 AD2d 765 [1978]). The defendant, however, "bears the ultimate burden of proving, by a preponderance of the credible evidence, that the evidence should not be used against him" (*People v Thomas*, 291 AD2d at 463; *see People v Berrios*, 28 NY2d 361, 367 [1971]; *People v Whitehurst*, 25 NY2d at 391). "The credibility determinations of the Supreme Court following a suppression hearing are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record" (*People v Smith*, 77 AD3d 980, 981 [2010] [internal quotation marks omitted]; *see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Blinker*, 80 AD3d 619 [2011]; *People v Johnson*, 79 AD3d 905 [2010]; *People v Castro*, 73 AD3d 800, 800-801 [2010]; *People v Shackleford*, 57 AD3d 578 [2008]).

"Where a testifying officer claims to have seen that which common sense dictates could not have been seen, courts have repeatedly deemed this testimony patently tailored to meet constitutional objections" (*People v Lebron*, 184 AD2d 784, 787 [1992]; *see People v Rutledge*, 21 AD3d 1125, 1126 [2005]; *People v Lewis*, 195 AD2d 523, 524 [1993]). Here, contrary to the defendant's contention, the arresting officer's testimony at the pretrial hearing that he observed, in plain view and without leaning into the car in question, the butt of a handgun protruding from beneath the driver's seat while he was squatting in the space created by the open front passenger-side door, was not incredible as a matter of law (*see People v James*, 19 AD3d 617, 618 [2005]; *People v Burgess*, 168 AD2d 685, 686 [1990]; *People v Kalish*, 166 AD2d 610, 611 [1990]; *People v Burke*, 146 AD2d 706, 706-707 [1989]). Moreover, the hearing testimony does not support the defendant's contention that the officer's testimony was a fabrication tailored to nullify constitutional objections

(*see People v Glenn*, 53 AD3d 622, 624-625 [2008]; *People v James*, 19 AD3d at 618; *People v Burgess*, 168 AD2d at 686; *cf. People v Miret-Gonzalez*, 159 AD2d 647, 649 [1990]; *People v Garafolo*, 44 AD2d 86, 88 [1974]). Accordingly, the Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress the handgun.

However, the cumulative effect of the prosecutor's improper comments during summation requires a new trial. While the defendant's claim regarding the comments made by the prosecutor during summation is partially unpreserved for appellate review, we nevertheless review it in the exercise of our interest of justice jurisdiction (*see* CPL 470.15 [6] [a]; *People v Badine*, 301 AD2d 178, 180 [2002]; *Matter of Stagnar v Stagnar*, 98 AD2d 983, 984 [1983]).

"[I]n summing up to the jury, [the prosecutor] must stay within 'the four corners of the evidence' and avoid irrelevant and inflammatory comments which have a tendency to prejudice the jury against the accused" (*People v Bartolomeo*, 126 AD2d 375, 390 [1987], quoting *People v Ashwal*, 39 NY2d 105, 109-110 [1976]). At trial, the arresting officer testified that he observed the defendant "sweating very profusely" and his heart beating rapidly during the traffic stop. The defendant presented medical evidence to establish that his perspiration and rapid heart rate were the result of hypertension. During summation, the prosecutor improperly commented on the defendant's medical evidence by repeatedly referring to it as a "distraction," a "smokescreen," and "smoke and mirrors," while at the same time arguing in support of the People's case that the defendant's physical condition was evidence of consciousness of guilt (*see People v Pagan*, 2 AD3d 879, 880 [2003]; *People v Ortiz*, 125 AD2d 502, 503 [1986]; *People v Torres*, 111 AD2d 885, 886-887 [1985]; *cf. People v Galloway*, 54 NY2d 396, 399 [1981]; *People v Flores*, 191 AD2d 306, 307 [1993]). The prosecutor also impermissibly shifted the burden of proof to the defendant by informing the jurors that if they did not find the defendant's testimony "reasonable," they could not "form the basis of reasonable doubt" (*see People v Pagan*, 2 AD3d at 880; *People v Bull*, 218 AD2d 663, 665 [1995]; *People v Bonaparte*, 98 AD2d 778 [1983]). Finally, the evidence presented at trial established that the arresting officer recovered the handgun from beneath the "front seat" of the car. As there was no evidence to establish that the handgun was found beneath the front passenger seat as opposed to the front driver's seat, the prosecutor misstated the evidence during summation when he told the jury on 14 occasions that the handgun had been found beneath the

front passenger seat where the defendant was sitting (see People v Brown, 256 AD2d 414, 416 [1998]; People v Cotton, 242 AD2d 638, 638-639 [1997]; People v Cobb, 104 AD2d 656, 657 [1984]).

The cumulative effect of these improper comments deprived the defendant of a fair trial (see People v Calabria, 94 NY2d 519, 522 [2000]; People v Brown, 26 AD3d 392, 393 [2006]; People v Pagan, 2 AD3d at 880; People v Cotton, 242 AD2d at 638-639).

In light of our determination, the defendant's contention that it was improper for the prosecutor to argue that the defendant had the benefit of hearing the People's proof before testifying has been rendered academic. Rivera, J.P., Dillon, Hall and Roman, JJ., concur.